# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Barbara L. Yoder and Joseph I. Yoder, : 
Wife and Husband, Individually, and as : 
Trustees of The Yoder Family Trust : 
No. 2 and Hardwood Mill Trust : 
 : 
 : 
v. : No. 1927 C.D. 2016
 : 
Sugar Grove Area Sewer Authority : Submitted: November 14, 2017
 : 
Sugar Grove Area Sewer Authority : 
 : 
 : 
v. : 
 : 
 : 
Barbara L. Yoder and Joseph I. Yoder, : 
Wife and Husband, Individually, and as : 
Trustees of The Yoder Family Trust : 
No. 2 and Harwood Mill Trust : 
 : 
Appeal of: Barbara L. Yoder and Joseph : 
I. Yoder :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                    HONORABLE PATRICIA A. McCULLOUGH, Judge
                    HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                      **FILED: January 5, 2018**

          This mandatory sewer connection matter returns to us after remand. Barbara L. Yoder and Joseph I. Yoder, individually and as Trustees of the Yoder Family Trust No. 2 and Hardwood Mill Trust (Owners), appeal from an order of the Court of Common Pleas of the 37th Judicial District, Warren County Branch (trial court) that denied preliminary injunctive relief, and required their connection to the Sugar Grove Area Sewer Authority (Authority) sewer system by electric means.

Owners are Old Order Amish. In the initial appeal, we directed the trial court to assess whether electric service was the least intrusive means of sewer connection. See Yoder v. Sugar Grove Area Sewer Auth. (Pa. Cmwlth., No. 1956 C.D. 2015, filed June 3, 2016) (Remand Opinion). Relevant here, on remand the trial court determined Owners were required to connect by means of an electric grinder pump. Owners argue the trial court erred in denying preliminary injunctive relief when it previously found their religious tenets prohibited the use of electricity. Specifically, they assert the trial court erred in weighing the harms, and requiring Owners to offer less intrusive connection options when the Authority bears that burden under the Religious Freedom Protection Act[1] (Act). Based on the record, we conclude the trial court had reasonable grounds to deny preliminary injunctive relief. Accordingly, we affirm.

## I. Background

Owners maintain a residence in Sugar Grove Township (Township), which is subject to a mandatory connection ordinance, Ordinance No. 04-06-15 (Mandatory Connection Ordinance). Pursuant to the Mandatory Connection Ordinance, every owner whose property abuts the Authority sewer system, shall connect, at the owner's cost, any structures located on the property that are occupied or intended for human occupancy. Although Owners' property is subject to the Mandatory Connection Ordinance, one of the tenets of Owners' religion is to disavow electricity. As a result, Owners service their property with an old-fashioned privy (outhouse) without running water or electricity.

---

[1] Act of December 9, 2002, P.L. 1701, 71 P.S. §§2401–2407.

2

This is the third related sewer-connection action,[2] all involving Owners in some fashion. First, in prior litigation, the Authority sought injunctive and declaratory relief to compel Owners to connect to its system as mandated by the Mandatory Connection Ordinance (suit docketed at No. 191 of 2012). The Authority also requested that Owners be removed from the property to enable the Authority to connect the property in a manner it deemed fit (Prior Authority Litigation).

The Authority filed a motion for judgment on the pleadings. After briefing and argument, the trial court granted the Authority's motion in part, mandating Owners' connection to the sewer system. However, the trial court denied the Authority's request to compel Owners to allow connection in a manner the Authority deemed fit. Tr. Ct. Order, 11/26/13 (2013 Order). Relevant here, paragraph 5 of the 2013 Order provided: "[The Authority] shall, in the process of connecting the property to the sewer system, take due care as to [Owners'] religious convictions, and shall proceed in a manner so as to pose the least possible intrusion on [Owners'] religious convictions and beliefs." Id. (emphasis added).

Second, while the Prior Authority Litigation was pending, the Old Order Amish, including Owners, brought a class action suit against the Authority challenging the constitutionality of the Mandatory Connection Ordinance (suit docketed at No. 304 of 2013). Specifically, the class sought a declaration that the Mandatory Connection Ordinance violated their rights to religious freedom under the Act and the Constitution, and it sought an injunction against mandatory

---

[2] In addition, when Owners failed to pay overdue monthly sewer charges, the Authority filed a municipal claim (docketed at No. MLD 71 of 2010), and a summary criminal complaint against them (docketed at Nos. SA 21 and 22 of 2012). Owners appealed the trial court's judgment of guilt on the summary appeals to this Court, which we affirmed (appeal docketed at 229 C.D. 2012).

connection. Ultimately, President Judge Maureen Skerda resolved the merits of the class action suit against the Old Order Amish on January 27, 2016. This Court quashed the appeal (appeal docketed in this Court at 346 C.D. 2016), for failure to file post-trial motions. The Supreme Court then denied the petition for allowance of appeal on November 22, 2016, (Pa., No. 284 WAL 2016).

Third, the current litigation, an action for injunctive relief, stems from disagreements regarding the means of connecting Owners to the sewer system. Initially, the Authority advised Owners by letter that they must open an electric service account with Penelec to power the grinder pump for their connection. In response, Owners filed the preliminary injunction petition (Petition) underlying the instant appeal (Petition docketed at No. 507 A.D. of 2014). In their Petition, Owners claimed that requiring them to use electric service for the grinder pump, and open a Penelec account for that purpose, violated their rights to religious freedom guaranteed by the First Amendment to the U.S. Constitution, and Article 1, Section 3 of the Pennsylvania Constitution, and protected by the Act.

The trial court held two days of hearings on the Petition. Joseph Yoder (Yoder) testified regarding Owners' religious objections to opening an electricity account, and to having electricity used to power anything associated with the use of their privy.

The Authority presented testimony of a few witnesses, including that of its Sewage Enforcement Officer Todd Fantaskey (SEO), and Joseph Roddy (Engineer) as sewer system experts.

4

Relevant here, Engineer testified regarding connection options. He explained that gravity and grinder pump systems differ in that gravity systems depend on topography, and are more expensive to install, whereas a pressure system that uses a grinder pump "negates any issues as far as topography." Reproduced Record (R.R.) at 229a. He noted solar power offered a potential power source, but Yoder opposed anything that generated electricity, including solar power. He explained, "the Amish didn't like the idea of generating electricity at all," even with a generator. R.R. at 230a. He considered "direct drive" options where a belt or pulley would run the actual pump, id.; however, this also required an electric-powered motor. Developing a prototype pump to operate without electricity was impractical.

Based on the evidence presented, the trial court denied the preliminary injunction. Specifically, the trial court allowed the Authority to connect Owners in a manner within its "sole discretion." Tr. Ct. Order of 1/26/15 (2015 Order). Thus, its 2015 Order superseded its 2013 Order, which required the Authority to be mindful of Owners' religion, and its prohibition of electricity use, and to implement the connection using the means least intrusive to their religious beliefs. The trial court denied the motion as to the Authority's request that it require Owners to use electric service through Penelec, and it specified "[Owners] shall not be compelled to open an account with Penelec or any other provider for the electrical service necessary for the installation, operation, or maintenance of the sewer connection." Id.

Owners appealed, and this Court reviewed the matter (appeal docketed at 1956 C.D. 2015). In our Remand Opinion, we recognized the trial court mandated Owners' connection to the sewer system in its 2013 Order in the Prior Authority

5

Litigation. However, we held the trial court erred in attempting to supersede its 2013 Order as to the manner of connection. We reinstated the mandate in paragraph 5 of the 2013 Order that the Authority employ the least intrusive means of connection, accounting for Owners' religious beliefs.

Because Owners prevailed on the means of connection issue, we also held the trial court erred in denying injunctive relief based solely on its holding that Owners lacked a clear right to relief. We instructed the trial court to consider all six elements for preliminary injunctive relief on remand "based on the alleged harm of requiring the use or installation of electric service to accomplish the mandatory connection." Remand Op. at 18-19. We remanded to enable the trial court to consider the harm of an electric connection against non-electric alternatives, and to make related findings in light of its 2013 Order in the Prior Authority Litigation recognizing Owners' right to the least intrusive means of connection.

On remand, based on the existing record, the trial court analyzed whether Owners met the six prerequisites for injunctive relief. The trial court also assessed whether a grinder pump powered by electricity was the "least intrusive means" of connecting to the sewer system.

In its August 2016 opinion on remand, the trial court determined Owners met the irreparable harm element because the harm is forcing an action (use of electricity) that would violate their religious beliefs. It noted it "previously ruled that [Owners'] beliefs are sincere." Tr. Ct., Slip Op., 8/9/16, at 3. The harm of requiring electricity use was therefore not compensable by money damages.

6

The trial court also found Owners met the third factor (restoration of the status quo), as well as the fifth factor (reasonably suited to injunctive relief).

As to the second factor, whether greater harm would result from refusing the injunction than granting it, the trial court concluded Owners did not meet their burden. It found that granting an injunction, and exempting Owners from using electricity to power the means of connection, would cause more harm than denying relief. In assessing the harms, it recognized that Owners, on a limited basis, used electricity when necessary, through telephones and riding in motor vehicles. In addition, a witness observed Owners using power tools (circular saw). R.R. at 145a. As a result, the trial court found that Owners used electricity when necessary, such that the degree of harm from use of an electric grinder pump that they would not see and with which they would not need to interact, was moderate. It weighed that moderate harm against the risk of using untested means of connection, noting the risk of malfunction of part of the sewer system posed a serious threat to public health.

The trial court also determined Owners failed to prove a clear right to relief. The trial court defined the relief as connecting to the sewer system through non-electric means. In evaluating whether Owners met this factor, it placed the burden on Owners to establish the least intrusive means with non-electric connection options. Because Owners did not offer any non-electric alternatives for connecting, the trial court found they did not show a clear right to relief.

The trial court also concluded Owners did not establish that enjoining an electric connection would not adversely affect the public interest. It found that if

7

it enjoined the Authority from using an electric grinder pump, the public would suffer a substantial harm. The trial court identified the harm to the public as the risk from malfunction of an untested and unfamiliar mechanism for connection. The trial court emphasized that using a non-electric, untested means of connection would pose potential problems with the Authority's operation and maintenance of the sewer system. It noted the Mandatory Connection Ordinance mandated connection to avoid the risks of malfunction; that purpose would be undermined by permitting connection by an unknown, untested means.

Finally, as to the means of connection, the trial court found an electric grinder pump was the only feasible option. It found that the property's location made "use of a gravity system untenable." Tr. Ct., Slip Op., 8/9/16, at 4. It found electricity was required to power the grinder pump, which is the only means of connecting to the Authority's pressurized sewer system. Owners objected to any and all uses of electricity for the connection. As a result, the trial court found all options that required the privy to use electricity were equally intrusive. It also concluded installing the pump on Owners' property caused no additional harm.

Owners filed motions challenging the trial court's August 2016 opinion and related order denying the Petition. The trial court denied Owners' post-trial motions by order dated October 12, 2016. Owners appealed that order to this Court.

The trial court directed Owners to file a concise statement of the errors complained of on appeal pursuant to Pa. R.A.P. 1925(b). Owners filed the statement, asserting the trial court erred in applying the injunction factors, in placing the burden

8

of proof on Owners as to the least intrusive means, and in ultimately denying injunctive relief. The trial court then issued an additional opinion under Rule 1925(a), incorporating its August 2016 opinion.

After submission on briefs, the matter is ready for disposition.

## II. Discussion

On appeal, Owners assert the trial court erred in four related respects. First, Owners contend the trial court disregarded its 2013 Order in the Prior Authority Litigation that recognized electricity use offends Owners' sincere religious beliefs. Second, they argue the trial court misapplied our Remand Opinion because it did not define the enjoinable harm as the use of electricity. Instead, they claim the trial court weighed the use of electricity against the harm that would result from Owners' failure to connect to the sewer system. Third, they challenge the trial court's analysis of the clear right element, particularly as to which party bears the burden of proving least intrusive means. Lastly, Owners maintain the trial court erred in denying relief when they met the prerequisites for a preliminary injunction.

## A. Legal Standards

In reviewing a trial court's order denying a preliminary injunction, our review is highly deferential. We "examine the record only to determine 'if there were any apparently reasonable grounds for the action of the court below ....'" Reed v. Harrisburg City Council, 927 A.2d 698, 703 (Pa. Cmwlth. 2007) (citation omitted). Indeed, "[o]nly if it is plain that *no* grounds exist to support the decree, or that the rule of law relied upon was palpably erroneous or misapplied, will the decision be

9

interfered with." <u>Unionville-Chadds Ford Sch. Dist. v. Rotteveel</u>, 487 A.2d 109, 111 (Pa. Cmwlth. 1985) (emphasis in original).

In order to obtain a preliminary injunction, a petitioner must establish the following: (1) immediate and irreparable harm in the absence of an injunction; (2) greater injury will result by not granting the injunction than by granting relief; (3) restoration of the status quo; (4) a clear right to relief; (5) an injunction is appropriate to abate the alleged harm; and, (6) the preliminary injunction will not adversely affect the public interest. <u>Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.</u>, 828 A.2d 995 (Pa. 2003). Our Supreme Court consistently holds that "for a preliminary injunction to issue, *every one* of these prerequisites must be established; if the petitioner fails to establish any one of them, there is no need to address the others." <u>Cty. of Allegheny v. Commonwealth</u>, 544 A.2d 1305, 1307 (Pa. 1988) (emphasis in original).

The General Assembly enacted the Act in 2002 to enlarge constitutional protections against government intrusion on an individual's religious beliefs. <u>See</u> <u>Brown v. City of Pittsburgh</u>, 586 F.3d 263 (3d Cir. 2009). Section 4 of the Act states, "an agency shall not substantially burden a person's free exercise of religion." 71 P.S. §2404. An agency "substantially burdens" the free exercise of religion when it "[c]ompels conduct or expression which violates a specific tenet of a person's religious faith." Section 3 of the Act, 71 P.S. §2403. When an agency imposes a substantial burden, it must establish that the burden imposed is "[t]he least restrictive means of furthering the compelling interest." Section 4(b) of the Act, 71 P.S. §2404(b).

## B. Issues on Appeal

At the outset, we emphasize the limited issue before this Court. Our Remand Opinion reinstated the trial court's 2013 Order in the Prior Authority Litigation. The only detail unresolved by the 2013 Order was the <u>means</u> of mandatory connection. The trial court partially resolved that aspect of connection in Owners' favor by requiring the least intrusive means, mindful of Owners' religious beliefs prohibiting electricity use.

Our Remand Opinion asked the trial court to discern whether the use of electricity was the least intrusive means of implementing connection under the Mandatory Connection Ordinance. We instructed the trial court to analyze all six elements of preliminary injunctive relief, utilizing the use of electricity as the harm to be enjoined.

### 1. 2013 Order & Means of Connection

First, Owners assert the trial court disregarded its 2013 Order in the Prior Authority Litigation by mandating connection by use of an electric grinder pump. According to Owners, by requiring electricity use, the trial court failed to uphold its 2013 finding that Owners' religious beliefs were sincere. They claim that by characterizing their occasional use of electricity as "concessions," Tr. Ct., Slip Op., at 4, the trial court questioned the sincerity of their beliefs. Owners emphasize that any use of electricity is contrary to their religious beliefs, such that any connection of their privy to the Authority sewer system renders it unusable.

The Authority responds that the trial court acknowledged its findings in the 2013 Order, and did not question the sincerity of Owners' beliefs. Rather, the trial court considered the <u>degree</u> of harm in their use of electricity when Owners admittedly used electricity on occasion. It contends the trial court properly assessed Owners' prior uses of technology when weighing the harm electricity use poses upon their religious freedom.

### a. 2013 Order, Prior Authority Litigation

The 2013 Order pertained to the Prior Authority Litigation between the same parties, in which the Authority sought to enforce the Mandatory Connection Ordinance. The trial court granted judgment on the pleadings as to the mandatory nature of connection in the Authority's favor. However, the trial court recognized Owners' sincere religious beliefs were contrary to the installation of electric service. Therefore, as to the means of connection, the trial court found partially in Owners' favor.

Because the trial court disagreed with the Authority's proposed method of connection, it specified that when connecting the property, the Authority "shall … take due care as to [Owners'] religious convictions, and <u>shall proceed in a manner so as to pose the least possible intrusion on [Owners'] religious convictions and beliefs</u>." 2013 Order at ¶5 (emphasis added). The 2013 Order became binding and enforceable when neither party appealed it.

We agree that the trial court's 2013 Order and corresponding opinion recognizes the sincerity and importance of Owners' religious convictions. However,

12

we disagree with Owners' contention that the trial court disregarded these findings when it denied the Petition. To the contrary, it stated that it "previously ruled that [Owners'] beliefs are sincere," and it found Owners established the use of electricity constituted irreparable harm. Tr. Ct., Slip Op., 8/9/16, at 3.

Owners mischaracterize the 2013 Order as exempting them from mandatory connection based on their religious beliefs. Yet, the trial court directed connection despite those beliefs. It reasoned, the "interest of the people of this Commonwealth in the treatment of [s]ewage … trumps the individual interests of the Yoders …." Tr. Ct., Slip Op., 11/26/13 (191 A.D. of 2012), at 6. It further found: "that the Yoders' (individual) Free Exercise rights do not outweigh the public interest in maintaining public health through a properly functioning sewer system." Id. at 10. Therefore, the trial court's 2016 opinion, which recognized the public health concerns inuring to mandatory sewer connection outweighed Owners' religious beliefs, is consistent with its findings as set forth in the 2013 opinion.

Moreover, the trial court did not denigrate the sincerity of Owners' religious beliefs when it considered their occasional electricity use in analyzing the elements for preliminary injunctive relief. Rather, it was considering the degree of harm from enjoining an electric connection. The trial court found the harm caused by mandating electricity use was "moderate," Tr. Ct., Slip Op., 8/9/16, at 4, based on Owners' past occasional use of electricity. It noted Owners used telephones and motor vehicles on occasion, and were observed using electric power tools. Based on Owners' admissions of some electricity use, the trial court discerned that some

13

use of electricity would not result in excommunication. Building on that foundation, the trial court then considered the means of connection.

### b. Means of Connection

That connecting to the Authority's pressurized sewer system entails an electric grinder pump appears undisputed. In fact, Owners conceded, "<u>mandatory connection</u> to the sewer system[,] … <u>by</u> definition and <u>admission</u>[,] <u>requires the use of electric grinder pumps</u>." Appellants' Br. at 15 (emphasis added). The question then became which means of powering the electric grinder pump was "least intrusive" to Owners' religion, in accordance with the 2013 Order.

Significantly, the trial court found "[t]he grinder pump … requires electricity as a power source." Tr. Ct., Slip Op., 8/9/16, at 5; <u>see</u> R.R. at 230a ("we have to have electricity somehow, somewhere to power a pump."). The evidence supports the finding that non-electric grinder pumps are not feasible. R.R. at 230a-32a. Also, the record includes evidence that the electric grinder pump is the mechanism with which the Authority is familiar, for consistent operation and ease of maintenance with the rest of the system. <u>Id.</u> at 228a-30a.

Requiring an alternative to electricity "would require [the Authority] to design and build a custom prototype grinder pump." Tr. Ct., Slip Op., 8/9/16, at 5. The record reflects that a prototype grinder powered by other than electric means is of dubious reliability because it is untested. R.R. at 232a ("[t]here's no guarantee [it would work properly]."). Given the public health consequences of a single malfunction, the trial court determined untested means were not worth the risk.

The trial court's determination that an electricity-powered pump was least intrusive did not discount the sincerity of Owners' religious beliefs. Nor did it disregard the trial court's 2013 Order and opinion recognizing the prohibition of electricity is a tenet of Owners' religion. Looking solely at the means of connection as instructed, the trial court concluded an electric grinder pump was the only means. Once it determined electricity use was the only feasible power source for connecting, the trial court recognized Owners deemed *all* means of supplying electricity equally intrusive. Tr. Ct., Slip Op., at 5 ("the harm to [Owners] remains the same regardless of whether the electrical power source of the grinder pump is Penelec, a [gas] generator, or solar panels.").

Importantly, during multiple proceedings, Owners did not indicate that any type of electricity generation for its privy was acceptable. In fact, Owners confirm, "[i]t has never been [their] position that there was some alternative pumping mechanism to the grinder pump." Appellants' Br. at 12. Instead of offering non-electric connection options, they insist their means of waste disposal, <u>without connecting</u> does not threaten public health or safety. Owners thus miss the point.

Owners admit that expert testimony proved there were "no other methods to connect the Yoders to the system without the use of electricity." Appellants' Br. at 17. As the only means of connection, the electric grinder pump was also the least intrusive means. Owners' admission, coupled with the lack of any argument that less intrusive means are available, left the trial court no choice but to conclude that the electric grinder pump constitutes the least intrusive means for serving the compelling interest in safe and sanitary sewage disposal.

15

Because Owners offered no basis for the trial court to distinguish between untested non-electric sources of power, the trial court made the only finding it could based on the evidence before it. Thus, we discern no inconsistency between the trial court's 2013 Order in the Prior Authority Litigation and its 2016 order on remand determining an on-site **emand**

Next, we consider Owners' argument that the trial court did not follow our Remand Opinion because it viewed the harm in terms of a lack of connection, not in terms of a non-electric means of connection. Owners contend the trial court erred when it weighed the harm of granting the injunction against denying it, because it weighed different types of harms.

This Court rejects Owners' premise that the trial court reframed the issue before it as one of mandatory connection. The trial court properly evaluated the harm in terms of the electricity use; it weighed the harm to Owners' religious beliefs attendant to electricity use against the harm to the Authority and to the public in enjoining that use. When the trial court weighed the electric means of connection against potential non-electric alternatives, it rejected non-electric possibilities. The record contains reasonable grounds for the trial court's decision in that regard.

Owners consider the use of electricity an "all or nothing" proposition. See R.R. at 67a, 88a (Yoder's testimony). As a result, they did not accept alternative sources of electricity to power the grinder pump. The trial court found all alternative electric sources were equally offensive to Owners' religious beliefs. Because of Owners' "all or nothing" approach, the trial court was forced to weigh their concerns

16

against the harm to the public occasioned by using no electric power whatsoever. In so doing, the trial court weighed the harms in conformity with our Remand Opinion.

### 3. Burden of Proving Clear Right

Owners also contend the trial court erred when it analyzed the clear right element required for a preliminary injunction. Owners assert that the onus of proving least restrictive burden is on the Authority under the Act. Thus, the trial court erred in placing the burden on Owners. They also argue an injunction may be granted absent a clear right where substantial legal questions must be resolved to determine the parties' rights.

Paragraph 5 of the 2013 Order conferred a clear right upon Owners to connect to the sewer system by the least intrusive means. Our Remand Opinion reinstated the 2013 Order requiring connection by such means. Thus, Owners had a clear right to enforce the 2013 Order as to the least intrusive means of connection.[3]

Here, the trial court discerned Owners' burden in terms of defining specific means, and demonstrating which were least intrusive. In that limited regard, the trial court erred. As the Authority concedes, on the merits of Owners' claim, the Authority bears the burden of proving the least restrictive burden to accomplish the

---

[3] Owners present the "clear right" as the right to avoid any connection to the sewer system that uses electricity. However, the 2013 Order did not entitle Owners to a non-electric alternative. It entitled them to only the least intrusive means of connecting based on the means capable of achieving the compelling interest of complying with the Mandatory Connection Ordinance. The lack of any feasible non-electric means does not excuse Owners from mandatory connection. That disregards the law of the case that mandated connection to protect the public health interest in proper sewage disposal.

17

compelling interest in connection under the Act.  Section 4(b) of the Act, 71 P.S. §2404(b).

Regardless, the Authority presented evidence of the least intrusive means of connection to its sewer system through Engineer's testimony.  Owners did not refute that evidence, and admitted connection to the Authority system would not be possible without using electricity.  Appellants' Br. at 17.  The trial court thus found the least intrusive means to achieve mandatory connection was an electricity-powered grinder pump.

Because Owners had a right under the 2013 Order to the least intrusive means of connection, they satisfied the clear right element.

### 4. Preliminary Injunctive Relief

Lastly, Owners argue the trial court erred in denying their Petition. They claim the trial court erred in not finding they met all the elements for relief when their religious beliefs prohibit the use of electricity.  Owners presuppose the harm to their beliefs trumps any other harm, including harm to public health. Further, requiring connection by an on-site electric grinder pump directly conflicts with their religious rights.  According to Owners, by denying an injunction, despite the 2013 Order recognizing their religious beliefs, the trial court doubts the sincerity of their beliefs.

Under the deferential standard of review applicable to orders deciding preliminary injunctions, this Court must uphold the trial court's order if the trial

court had "any apparently reasonable grounds" for finding the petitioner did not meet all six prerequisites for relief. Reed, 927 A.2d at 703. Accordingly, in this appeal, Owners bear the burden to establish that there are no reasonable grounds for the trial court's decision denying the injunction. Unionville-Chadds Ford Sch. Dist.

Here, the trial court found Owners did not meet three of the six prerequisites for preliminary injunctive relief. Although we respectfully disagree with the some of the trial court's legal reasoning as to a clear right to relief, we cannot fault the trial court's determination that the electric grinder pump was the least intrusive manner of connection on this record. Regardless, we agree with the trial court that Owners failed to establish two other prerequisites for relief: (1) the harm of denying the injunction outweighed the harm of granting the injunction; and, (2) granting the injunction would not adversely affect, or harm, the public.

The trial court, as fact-finder, weighed the evidence. Its findings, weighing the harms from granting versus denying injunctive relief, are entitled to deference. Summit Towne.

As to weighing the harm of granting the injunction against denying it, the record supports the trial court's findings that Owners use electricity on occasion, and that the Old Order Amish have not excommunicated Owners for such use. See R.R. at 88a-89a. The trial court properly considered Owners' incidental uses of electricity, and that such use was "condoned by their religion." Appellants' Br. at 22.

19

As to the harm in denying the injunction, Owners asserted, "greater injury would result from refusing the requested relief than in granting it, [because] requiring [Owners] to … utilize electric service to run a grinder pump violates their sincere and deeply held religious beliefs and would force them to abandon their property." Pet. at ¶21. Owners thus precluded any electric options as contrary to their beliefs. As it is undisputed that electricity is necessary for connection, the trial court did not err in considering the benefits of Owners' connection when weighing the harms.

Further, the trial court did not err in considering the benefits of Owners' connection to the Authority sewer system to public health. The trial court could make findings as to the risk of sewer malfunctions without any direct evidence that Owners' privy caused pollution. Moreover, the trial court's findings that the harm to the public outweighed the harm to Owners' sincere religious beliefs are consistent with its 2013 Order and opinion. Tr. Ct., Slip Op., 11/26/13, at 10.

Also, the trial court credited the Authority's witnesses' testimony as to the infeasibility of non-electric options. Owners offered no contrary evidence, or evidence from which the trial court could discern whether alternative power sources for the electric grinder pump would have been less intrusive to their beliefs. Owners admitted a mandatory connection necessitated the use of electricity, and they were unwilling to cooperate with the Authority and consider non-electric sources.

Thus, we discern apparently reasonable grounds for the trial court's denial of the preliminary injunction.

20

### III. Conclusion

The trial court's evaluation of the six prerequisites for preliminary injunctive relief comports with our Remand Opinion. Based on the record, the trial court determined Owners did not meet all of the prerequisites for relief. Owners did not establish the injunction would not harm the public, or that the harm in denying the injunction outweighed the harm in granting it. We defer to the trial court's findings as to weighing the harms and the adverse effect of an injunction on the public health. After several years of litigation on multiple fronts, we recognize a strong interest in accomplishing the mandatory connection without further delay. Because there are apparently reasonable grounds for the trial court's denial of preliminary injunctive relief, we affirm.

ROBERT SIMPSON, Judge

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Barbara L. Yoder and Joseph I. Yoder, :
Wife and Husband, Individually, and as :
Trustees of The Yoder Family Trust :
No. 2 and Hardwood Mill Trust :
                                      :
            v.                        :  No. 1927 C.D. 2016
                                      :
Sugar Grove Area Sewer Authority      :  Submitted: November 14, 2017
                                      :
Sugar Grove Area Sewer Authority      :
                                      :
            v.                        :
                                      :
Barbara L. Yoder and Joseph I. Yoder, :
Wife and Husband, Individually, and as :
Trustees of The Yoder Family Trust :
No. 2 and Harwood Mill Trust :
                                      :
Appeal of: Barbara L. Yoder and Joseph :
I. Yoder                              :

# **O R D E R**

**AND NOW**, this 5th day of January, 2018, the order of the Court of Common Pleas of the 37th Judicial District (Warren County Branch) is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Barbara L. Yoder and Joseph I. Yoder, :
Wife and Husband, Individually, and :
as Trustees of The Yoder Family Trust :
No. 2 and Hardwood Mill Trust :
 :
 : No. 1927 C.D. 2016
 v. :
 : Submitted: November 14, 2017
Sugar Grove Area Sewer Authority :
 :
Sugar Grove Area Sewer Authority :
 :
 v. :
 :
Barbara L. Yoder and Joseph I. Yoder, :
Wife and Husband, Individually, and :
as Trustees of The Yoder Family Trust :
No. 2 and Hardwood Mill Trust :
 :
Appeal of: Barbara L. Yoder and :
Joseph I. Yoder :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge

## *OPINION NOT REPORTED*

DISSENTING OPINION
BY JUDGE McCULLOUGH                          FILED: January 5, 2018

The Court of Common Pleas of the 37th Judicial District, Warren County Branch (trial court) found that Barbara L. Yoder and Joseph I. Yoder, individually and as trustees of the Yoder Family Trust No. 2 and Hardwood Mill Trust (Owners), are sincere in their disavowal of electricity pursuant to their

religious beliefs as Old Order Amish. Nonetheless, the well-written Majority affirms the trial court and compels Owners to connect to the sewer system operated by Sugar Grove Area Sewer System Authority (Authority) by means of an electricity-powered grinder pump. Based on the record, I believe Owners are being denied their rights to religious freedom as guaranteed by the First Amendment to the United States Constitution,[1] article I, section 3 of the Pennsylvania Constitution,[2] and as protected by the Religious Freedom Protection Act (Act).[3] Therefore, I respectfully dissent.

The record shows that, relevant to Owners' beliefs, they service their property with a privy without running water or electricity. The trial court ordered Owners to connect to the Authority's sewer system through the use of an electric-powered grinder pump, and rejected other non-electric means of connection as purportedly "untested" or "untenable" due to topography. (Trial Court's August 9, 2016 Order at 4.) By denying Owners' preliminary injunction and so ordering them to connect to the Authority's system through the grinder pump, the trial court has ignored the import of the religious freedom protections Owners are afforded and violated the intent of this Court's remand opinion that the Authority employ the least intrusive means of connection, accounting for Owners' religious beliefs.

Specifically, the trial court placed the burden on Owners to establish the least intrusive means of connection with non-electric options and, because Owners did not meet this burden, the trial court found that they did not show a clear right to relief. This was an error of law by the trial court.

---

[1] U.S. CONST. amend. I.

[2] PA. CONST. art. I, §3.

[3] Act of December 9, 2002, P.L. 1701, 71 P.S. §§2401–2407.

Section 3 of the Act provides that an agency (such as the Authority) "substantially burdens" the free exercise of religion when it "[c]ompels conduct or expression which violates a specific tenet of a person's religious faith." 71 P.S. §2403(4). Clearly, that is the case here, i.e, as the trial court found the disavowal of electricity to be a sincerely held religious belief by Owners, who are Old Order Amish.

Section 4(b)(2) of the Act places the burden on the Agency, i.e., the Authority, to establish that the burden imposed is "[t]he least restrictive means of furthering the *compelling* interest." 71 P.S. §2404(b)(2) (emphasis added). The trial court should have placed the burden of demonstrating the least intrusive means of connection with non-electric options on the Authority, and it committed error when it required Owners to do so.

Further, in a prior 2016 decision remanding the matter to the trial court, this Court reinstated the trial court mandate that the Authority, not Owners, employ the least intrusive means of connection, accounting for Owners' religious beliefs. *Yoder v. Sugar Grove Area Sewer Authority*, (Pa. Cmwlth., No. 1956 C.D., filed June 3, 2016), slip op. at 54-55. This was not an idle expression by this Court, nor was it intended to be a self-fulfilling exercise by the Authority with the result being what it intended to impose on Owners from the outset—an electric grinder pump connection.

Accordingly, the trial court's order denying Owners' preliminary injunction should be vacated and this case remanded to the trial court with the instruction to place the burden on the Authority to demonstrate the least intrusive means of non-electric connection to its sewer system. It may be that there are none and, if that is the case, then the trial court should re-open the issue of compelling

Owners, against their sincerely held religious beliefs, to connect to the Authority's sewer system. The Act requires the interest of the agency/authority to be "compelling" before it imposes a substantial burden on religious freedom. I question whether mandatory electric connection is such a compelling interest so as to countenance this infringement upon Owners' religious freedom. In that regard, it is noted that the trial court's 2013 order recognized the "interest of the people of this Commonwealth in the treatment of [s]ewage." (Trial Court's November 26, 2013 Order at 6.) The disposal of waste is not an either-or proposition between outdoor privies or sewers. There are other means of disposition of waste, such as septic tanks and composting facilities, and while I am mindful that the Majority considers the mandatory connection to the Authority sewer system to be the "law of the case," rote adherence to that concept is not required, especially when an incorrect or unjust result would obtain because of it. *See Rhoades v. School District of Abington Township*, 226 A.2d 53, 61 (Pa. 1967) ("Any interpretation of legislation, therefore, which would deny the fullest voluntary freedom in religious worship would not only be contrary to these American historical expressions of faith, but would also offend against the First Amendment with its bell-clanging proclamation of religious freedom."); *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 801 (Pa. 1964) (expressing concern about "wooden application" of rules "yield[ing] harsh, unnecessary, and unjust results.").

 

 

_____
PATRICIA A. McCULLOUGH, Judge